UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:20-cr-00206-LSC-SGC-1 |
| ) | |
| ) | |
| PATRICK DEVONE STALLWORTH, ) | |
| ) | |
| Defendant/Movant. ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the Court on the defendant's motion to suppress statements made to law enforcement. (Doc. 76). Upon consideration, the Court finds that the motion is due to be denied and the statements will not be suppressed.

**I.   BACKGROUND**

The defendant, Patrick Devone Stallworth ("Stallworth"), has been charged by indictment with Kidnapping Resulting in Death and Conspiracy to Commit Kidnapping Resulting in Death under 18 U.S.C. §§ 1201(a)(1) & (c). Stallworth filed a motion to suppress. (Doc. 76). The United States filed a response in opposition. (Doc. 88). Stallworth replied in support of his motion. (Doc. 93).

The Court conducted an evidentiary hearing on the motion on August 8, 2022. Although in his motion to suppress, Stallworth referenced five statements that

he made to law enforcement between October 13, 2019, and October 22, 2019, his counsel clarified at the beginning of the evidentiary hearing that Stallworth was seeking to suppress only the statement that he made to officers on October 22, 2019. Thus, the parties presented evidence and argument only as to that instance. The sole witness at the hearing was Detective Jonathan Ross of the Birmingham Police Department, Homicide Division. The Government offered three exhibits: a video of Stallworth being interviewed by Detectives Ross and Talana Brown on October 22, 2019 (Exhibit 1), a *Miranda* waiver of rights form dated October 22, 2019, on which Detective Ross had marked "signature refused" (Exhibit 2), and a *Miranda* waiver of rights form also dated October 22, 2019, signed by Stallworth (Exhibit 3). (Doc. 100). At the conclusion of the hearing, the undersigned noted that some of what was said on the video, Government's Exhibit 1, was difficult to ascertain and asked the parties to attempt to transcribe, to the best of their ability, the specific portion of the video that is relevant to Stallworth's motion to suppress. The parties did so and presented to the Court a transcript, which was made the Government's fourth exhibit. (Doc. 101.) While the Court considered this transcript, the Court made an independent determination of what was said on the video by its own consideration of Government's Exhibit 1.

**II.   FACTS**

Before Stallworth was interviewed on October 22, 2019, he had spoken with law enforcement on three prior occasions.[1] On October 13, 2019, Stallworth was taken into custody by the Birmingham Police Department as a person of interest believed to be involved in a kidnapping. Stallworth was transported to the Birmingham Police Department administrative building and interviewed by detectives. Stallworth was read his *Miranda* rights and signed a Birmingham Police Department form affirming that he understood his *Miranda* rights and that he knowingly, intelligently, and voluntarily chose to waive those rights and speak to detectives. On that occasion, Stallworth was interviewed for approximately two hours. During the interview, Stallworth asked detectives several times whether he needed an attorney. Each time, detectives told Stallworth that whether an attorney was present was entirely his decision. Each time, Stallworth continued to talk to the detectives. At the conclusion of the interview, Stallworth was held in custody while the investigation continued.

On October 15, 2019, Stallworth was interviewed again by detectives and a Federal Bureau of Investigation ("FBI") special agent. He was read his *Miranda* rights, voluntarily gave a statement, and was interviewed for approximately one and

---

[1] Recordings of Stallworth's first, second, and third interviews were not presented at the evidentiary hearing because Stallworth does not seek to suppress the statements made therein. The Court presents information as to these three prior interviews for background purposes only.

a half hours. Later in the day on October 15, 2019, Stallworth was interviewed by an FBI special agent and an FBI task force officer. The purpose of this interview was to ask Stallworth questions about images of child pornography found on Stallworth's phone. Officers showed Stallworth a form delineating his *Miranda* rights while one of the officers read the *Miranda* rights aloud. Stallworth signed that *Miranda* form indicating that he understood his rights and wished to waive those rights and speak to investigators. Stallworth was interviewed for approximately one hour.

After the interviews on October 15, 2019, the State of Alabama charged Stallworth with offenses relating to the child pornography found on his cell phone in Jefferson County District Court case numbers DC 2019-11279 through DC 2019-11285. An attorney was appointed to represent Stallworth at his initial appearance on October 16, 2019, for the child pornography charges. On October 17, 2019, Stallworth posted bond and was released on his pending child pornography charges.

On October 22, 2019, Stallworth was taken into custody after law enforcement discovered additional evidence implicating him in the kidnapping. On that evening, Birmingham Police Department Homicide Detectives Ross and Brown attempted to interview Stallworth. They showed Stallworth a photograph of the decomposed body of the deceased victim of the kidnapping. (Government's Exhibit 1, at video time marker 21:53:45.) Detective Ross advised Stallworth of his *Miranda* rights and

4

attempted to give him an opportunity to give a statement before being charged. (*Id.* at 21:54:53.) Detective Brown told Stallworth several times that officers had spoken with Derick Brown, Stallworth's co-defendant, about the disappearance of the victim and that the officers were asking Stallworth to tell his version of the story. Stallworth refused to acknowledge his *Miranda* rights and attempted to proclaim his innocence and ask questions of Detectives Ross and Brown. After he had been talking with the detectives for approximately 20 minutes, Stallworth invoked his right to an attorney. (*Id.* at 22:12:33.) The following exchange occurred, which is the subject of Stallworth's instant motion to suppress:[2]

> STALLWORTH: I don't believe that, I don't believe that, I don't believe that, I just want to, I want to talk to my lawyer. I ain't saying y'all are right or wrong but I cooperated. You [unintelligible] you show me this baby gone. Nuh uh, Nuh uh.
>
> DET. BROWN: Alright.
>
> [Detectives get up from the table, clear the table, and begin to leave the room.]
>
> STALLWORTH: [Unintelligible] I'm sorry y'all. I'm sorry y'all, I don't know I don't know nothing about this baby.
>
> DET. BROWN: OK, we gave you a opportunity. It's gonna be our time to tell the story about what Derick and

---

[2] The following block quote is copied from the transcript created by the parties at the conclusion of the evidentiary hearing and made Government's Exhibit 4. (Doc. 101.) However, the Court has also included information within brackets describing movement depicted in the video, which is Government's Exhibit 1.

|  |  |
|---|---|
|  | [unintelligible] does, because how do you think we [unintelligible]. |
| DET. ROSS: | Sit tight. |

[Detectives leave the room.]

[Detectives walk back into room.]

| DET. ROSS: | Turn around. Turn around. The other way. Put your hands together. [Placing handcuffs on Stallworth.] |
|---|---|
| DET. BROWN: | We gave you an opportunity, Mr. Stallworth. |
| STALLWORTH: | I mean I can talk to y'all but it's going to be the same thing. I don't know nothing about this baby. |
| DET. BROWN: | But we gave you the opportunity, I told you several times don't let Derick tell your story, don't let us tell your story. |
| STALLWORTH: | She ain't telling my story. |
| DET. BROWN: | Don't let, you don't know what the story is because you ain't talk to us. |
| DET. ROSS: | Have a seat you under arrest for capital murder. Ok. Have a seat. Have a seat. Thank you sir. |

[Detectives begin to leave the room.]

| STALLWORTH: | Look, detective. Talk to me. Talk to me. |
|---|---|
| DET. ROSS: | Yea, Talk to you? [Detectives turn back around.] |
| STALLWORTH: | I can't be up under arrest for no capital murder when I didn't touch no baby. |

6

(*Id.* at approx. 22:12:33 to 22:14:33.) After a brief additional exchange, the detectives removed Stallworth's handcuffs (*id.* at 22:16:07) and Detective Ross advised Stallworth of his *Miranda* rights by reading them out loud and having Stallworth read them as well (*id.* at 22:17:50.) Stallworth signed another *Miranda* form which indicated that he understood his rights and wished to waive those rights and speak to investigators. (*Id.* at 22:19:42.) Detective Ross confirmed with Stallworth several times that, although he had previously asked to speak with his attorney, he had at that point decided to speak with them without an attorney. (*Id.* at 22:19:56.) Stallworth was then interviewed for approximately one hour before he once again invoked his right to have his attorney present. At that point the interview was terminated. Detective Ross testified that while Stallworth gave them some information during that interview, in his opinion he was not being entirely truthful.

On October 23, 2019, Stallworth reached out to Detective Ross and asked to speak with him. Stallworth was interviewed by Detectives Ross and Brown, who first read him his *Miranda* rights and had Stallworth read them as well. Stallworth signed a waiver of rights form. Stallworth was interviewed for approximately two hours, and

he provided his most detailed statement regarding his involvement in the kidnapping.[3]

## III.   DISCUSSION

Stallworth argues that on October 22, 2019, detectives ignored his request to speak to an attorney and continued to interrogate him in violation of his Fifth and Fourteenth Amendment rights, and thus his statements are inadmissible. Stallworth's argument lacks merit because the evidence shows that the detectives' comments to him after he requested counsel were made in response to Stallworth's own reinitiating of the conversation, and further, that any incriminating statements were made after Stallworth expressly waived his *Miranda* rights.

The Government bears the burden of showing by a preponderance of the evidence that a suspect's in-custody statements were obtained in compliance with the dictates of *Miranda v. Arizona*, 384 U.S. 436 (1966), and were otherwise voluntary. *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004). *Miranda* holds that a suspect subject to custodial interrogation has the right to consult with an attorney and to have an attorney present during questioning, and that law enforcement officers must explain these rights to him before questioning begins. 384 U.S. at 469–73. Under *Miranda*, "evidence obtained as a result of a custodial interrogation is

---

[3]  As with the first, second, and third interviews, Stallworth does not seek to suppress the statements he made in the October 23, 2019, interview.

inadmissible unless the defendant had first been warned of his rights and knowingly waived those rights." *United States v. Parr*, 716 F.2d 796, 817 (11th Cir. 1983). If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, officers are free to question him. *North Carolina v. Butler*, 441 U.S. 369, 372–76 (1979). But if the suspect requests counsel at any time during the interview, all questioning must stop until a lawyer has been made available or the suspect himself reinitiates conversation with officers. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). In *Edwards*, relied upon by Stallworth in support of his motion, the defendant requested counsel after police took him into custody and began interrogating him. *Id*. at 478–79. The police stopped interrogating the defendant at that point, but they reinitiated questioning the following morning, prompting the defendant to confess his crime. *Id*. at 479. The defendant did not reinitiate further communications, exchanges, or interactions with the police. *See id*. The Supreme Court held that the admission of the defendant's confession against him at trial violated the Fifth and Fourteenth Amendments as construed in *Miranda*. *Id*. at 480.

In *Oregon v. Bradshaw*, the Supreme Court stated that a suspect reinitiates an interview with officers if he "evince[s] a willingness and a desire for a generalized discussion about the investigation." 462 U.S. 1039, 1045-46 (1983). The Court also clarified that it did not hold in *Edwards* that a suspect's reinitiation of a conversation

9

with officers automatically amounts to a waiver of his previously-invoked right to counsel. 462 U.S. 1039, 1044 (1983). The Court emphasized that these are two separate inquiries, stating that in *Edwards*, it merely held that officers should not interrogate an accused who has invoked his right to counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* (quoting *Edwards*, 451 U.S. at 485). The Court described its rule in *Edwards* as designed to prevent a suspect in custody from being badgered by police officers. *Id.* According to the *Bradshaw* Court, then, "even if a conversation taking place after the accused has 'expressed his desire to deal with the police only through counsel,' is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Id.* The Court stated that it had actually made such a rule clear in a footnote to its *Edwards* opinion, which states:

> If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be "interrogation." In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

*Id.* at 1044-45 (quoting *Edwards*, 451 U.S. at 486 n.9). Thus, in determining whether an accused's reinitiation of a conversation with officers after having invoked his right to counsel amounts to a waiver of that right, courts should undergo a two-step process: first, determine whether the accused indeed reinitiated the dialogue such that officers' further interrogation of him does not violate *Edwards*; and second, ask whether the accused then validly waived his right to counsel, considering the totality of the circumstances, including the fact that the accused, not the officers, reopened the dialogue. *Id.* Finally, the Court emphasized that such a determination depends "upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Id.* at 1046 (quoting *Butler*, 441 U.S. at 374–75.)

Here, on October 22, 2019, Detectives Ross and Brown attempted to give Stallworth an opportunity to speak with them prior to being arrested and charged with kidnapping. After about 20 minutes, when Stallworth stated that he wished to speak to a lawyer, Detective Brown responded, "Alright." (Gov't Ex. 1 at 22:12:49.) Consistent with *Edwards*, she and Detective Ross then attempted to end the interview by standing up, clearing the table, and beginning to walk out of the room. Neither officer resumed questioning Stallworth. Detective Ross testified at the hearing that he considered the interview to be over at that point. Stallworth then

voluntarily reinitiated the conversation when he said, "I'm sorry ya'll. I'm sorry ya'll, I don't know I don't know nothing about this baby." (*Id.* at 22:13:02.) Detective Ross testified that it was this comment that stopped the detectives from leaving the room. Detective Brown then responded to Stallworth's comment by reminding him that they had already given him an opportunity to tell his story. Both detectives then left the room, and Detective Ross testified that this is when he marked the *Miranda* waiver of rights form that he had shown to and read to Stallworth "signature refused." (Gov't Ex. 3.) When the detectives walked back into the room, the brief exchange continued between Stallworth and Detective Brown as quoted above, as Detective Ross placed handcuffs on Stallworth and notified him that he was being placed under arrest for capital murder.

Detective Brown's comments to Stallworth after Stallworth said "I'm sorry ya'll. I'm sorry ya'll, don't know I don't know nothing about this baby" up to the point of Detective Ross notifying Stallworth that he was under arrest did not constitute a violation of *Edwards* because, although Stallworth invoked his right to an attorney, he then voluntarily reinitiated the dialogue. Stallworth argues that *Edwards* stands for the proposition that officers cannot continue to question a suspect after he invokes his right to counsel and then use the suspect's responses to the questions to argue that the suspect reinitiated the interview. True as that may be,

12

that is not what happened here. Detective Brown was free to converse with, and even ask questions of, Stallworth without running afoul of *Edwards* because Stallworth voluntarily reinitiated the dialogue as the officers were attempting to end the interview. *Contra Edwards*, 451 U.S. at 479 (although officers ceased interrogation of the defendant when he requested counsel, they nonetheless "returned to him the next day . . . not at his suggestion or request," "told [him] that they wanted to talk to him . . .").

Assuming solely for argument's sake that Stallworth's statement disavowing knowledge of the kidnapping ["I'm sorry ya'll. I'm sorry ya'll, I don't know I don't know nothing about this baby"] did not amount to a reinitiation of the interview because it did not "evince[] a willingness and a desire for a generalized discussion about the investigation," as contemplated by the Supreme Court in *Bradshaw*, 462 U.S. at 1045-46, there is no doubt that Stallworth did in fact indicate such a desire to discuss the investigation a few moments later when he stated to Detective Ross as he was again attempting to leave the room: "Look, detective. Talk to me. Talk to me." The Eleventh Circuit has found questions posed by suspects that are more innocuous than what Stallworth said to constitute reinitiation of questioning. *See Jacobs v. Singletary*, 952 F.2d 1282, 1294 (11th Cir. 1992) (suspect initiated questioning by asking why she was being detained at the police station); *Henderson v. Dugger*, 925

13

F.2d 1309, 1312–13 (11th Cir. 1991) (suspect initiated questioning by asking "what was going to happen next?"); *United States v. Valdez*, 880 F.2d 1230, 1232, 1234 (11th Cir. 1989) (suspect initiated dialogue by inquiring "Where are we going?" shortly after being placed into custody).

Stallworth's clear request to talk prompted Detective Ross to then remove Stallworth's handcuffs and read him his *Miranda* rights again. Detective Ross testified that at this point he was beginning a new interview. And it was only after being read his rights again and after having signed the waiver form (Gov't Ex. 3) that Stallworth made a statement. Detective Ross even clarified with Stallworth several times that although Stallworth had previously asked to talk to his lawyer, he was at that point desiring to talk to detectives without a lawyer.

Accordingly, the detectives did not violate Stallworth's constitutional rights as contemplated in *Edwards* by merely responding to Stallworth's voluntary reinitiation of the interview after having previously invoked his right to an attorney. The Court further finds that Stallworth's subsequent decision to speak to detectives without a lawyer present was voluntarily and knowingly made, considering that he initiated the interview again, he was read his rights, and he signed a waiver of rights form. *See Bradshaw*, 462 U.S. at 1044.

## IV.   CONCLUSION

Premised on the foregoing, the defendant's motion to suppress (doc. 76) is hereby **DENIED,** and Stallworth's October 22, 2019, statements to law enforcement will not be suppressed.

**DONE** and **ORDERED** on August 19, 2022.

_____
L. Scott Coogler
United States District Judge

160704