FILED

2023 Jan-13  PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **2:20-cr-00206-LSC-SGC-1** |
| | ) | |
| | ) | |
| | ) | |
| **PATRICK DEVONE STALLWORTH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF OPINION AND ORDER**

## I.  Introduction

Defendant, Patrick Stallworth ("Stallworth"), has filed a motion for judgment of acquittal and for new trial. (Doc. 127.) The United States has responded in opposition to the motion. (Doc. 136.) For the following reasons, the motion is due to be denied.

## II.  Background

Stallworth was charged by indictment with Kidnapping Resulting in Death and Conspiracy to Commit Kidnapping Resulting in Death under 18 U.S.C. §§ 1201(a)(1) & (c). Stallworth's trial began on October 4, 2022, and concluded on October 7, 2022, when a jury adjudged him guilty of both counts charged.

## III.    Standards of Review

In considering a Federal Rule of Criminal Procedure 29(c) motion for judgment of acquittal, the Court must "apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999). The Court "'must view the evidence in the light most favorable to the government and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005) (quoting *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989)). A jury's verdict should stand "if there is any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Hough*, 803 F.3d 1181, 1187 (11th Cir. 2011) (internal quotation marks and brackets omitted).

Federal Rule of Criminal Procedure 33(a) permits the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Court may not set aside a jury verdict and order a new trial unless "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand." *United States v. Mitchell*, 165 Fed. App'x 821, 831 (11th Cir. 2006).

## III.    Discussion

Stallworth offers six grounds on which he claims that he should receive a judgment of acquittal or a new trial, and each is addressed by the Court in turn.

**A.    Stallworth's argument that the United States failed to prove the interstate commerce requirement for his convictions**

Stallworth's first argument is that the United States "failed to prove a prima facia case of Interstate Commerce, as well as proof beyond a reasonable doubt," claiming that "[t]he case is purely Intrastate." (Doc. 127 at 1, ¶ 1.) Stallworth is factually and legally incorrect because the United States proved that Stallworth used an automobile in furtherance of the kidnapping of the victim.

The superseding indictment charged Stallworth with one count of violating 18 U.S.C. § 1201(a)(1) and one count of conspiring to violate that statute. Section 1201(a)(1) makes it a federal crime to kidnap a person using "the mail or any means, facility, or instrumentality of interstate or foreign commerce" in furtherance of the kidnapping. 18 U.S.C. § 1201(a)(1). In the Eleventh Circuit, an automobile is considered an instrumentality of interstate commerce because it moves in commerce. *See United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) (en banc). The Eleventh Circuit recognized in *Ballinger* the longstanding principle that "congressional power to regulate the channels and instrumentalities of commerce includes the power to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature." *Id.*

(citing, e.g., *United States v. Lopez*, 514 U.S. 549, 558-59 (1995)). The court further noted that "Congress has repeatedly used this [Commerce Clause] power to reach criminal conduct in which the illegal acts ultimately occur intrastate, when the perpetrator uses the channels or instrumentalities of interstate commerce to facilitate their commission." *Id.*

Although *Ballinger* did not address the federal kidnapping statute that Stallworth was convicted of violating here, 18 U.S.C. § 1201(a), courts of appeal in other circuits have expressly held that the federal kidnapping statute is constitutional under the Commerce Clause. For example, the Tenth Circuit held that section 1201(a) is a valid exercise of congressional power even if it covers cases that do not affect interstate commerce. *United States v. Morgan*, 748 F.3d 1024, 1032 & n.9 (10th Cir. 2014) (noting that "every district court to consider the issue has held 18 U.S.C. § 1201(a)(1) fits *Lopez's* second category and is constitutional under [the] Commerce Clause") (collecting cases)). Additionally, the Seventh Circuit recently rejected the same argument that Stallworth appears to make here, stating that "we do not agree with [the defendant's] view that the Commerce Clause asks us to consider each automobile's specific use in interstate commerce. Instead, it's the nature of the regulated object's class (here, automobiles) rather than the particular use of one member of that class ([the defendant's] Ford Explorer) that matters." *United States*

*v. Protho*, 41 F. 4th 812, 828 (7th Cir. 2022). Additionally, in an unpublished opinion, the Eleventh Circuit rejected a defendant's similar argument about his use of a cell phone in furtherance of a kidnapping, finding that "cellular telephones are instrumentalities of interstate commerce," and therefore, their use, "even without evidence that the calls were routed through the interstate system, sufficiently satisfied the use of interstate commerce element of an offense." *United States v. McKinley*, 647 F. App'x 957, 962 (11th Cir. 2016).

Applying these rules to the present case, in count one of the superseding indictment Stallworth is alleged to have used a "means, facility and instrumentality of interstate commerce, including, but not limited to, a Toyota Sequoia motor vehicle in committing and in furtherance of the commission of the offense." (Doc. 108 at 1-2). In count two of the superseding indictment, Stallworth is alleged to have conspired to commit the offense of kidnapping and the use of a Toyota Sequoia "in committing and in furtherance of the conspiracy" and the Toyota Sequoia is specifically mentioned in two of the four overt acts. (*Id.* at 2-3).

Then at trial, this Court instructed the jury that Stallworth could be found guilty of the crime of kidnapping only if all the following facts were proven beyond a reasonable doubt: ". . . (3) the Defendant used any means, facility, or instrumentality of interstate commerce in kidnapping the victim or in furtherance of kidnapping the

victim." (Doc. 122 at 11-12). The Court further instructed the jury that interstate commerce "means business or travel between one state and another" and that instrumentalities of interstate commerce "are the people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipments of goods." (*Id.* at 12).

At trial, the United States presented evidence that Stallworth used an instrumentality of interstate commerce in committing the crimes charged. The United States showed multiple surveillance videos (Government Exhibits "GXs" 35, 38, 43, and 49), which showed the route that the Toyota Sequoia travelled on the day of the kidnapping and presented the testimony of Blake Downing and his accompanying CAST report (GX 79), which demonstrated how Stallworth's cell phone location information matched those surveillance videos. This evidence gives rise to a reasonable inference that Stallworth was in the Toyota Sequoia during those times. Additionally, videos taken from a location adjacent to the Tom Brown Village at the time of the victim's disappearance reflects an individual matching Stallworth's description speaking to two young girls and then walking in the direction of the parking lot with them following him (GXs 41 and 42). Finally, Stallworth himself told law enforcement that he and his girlfriend drove to the Tom Brown Village around the time of the kidnapping, that he spoke to several young children there, and then

he and his girlfriend drove back to their apartment on Shadowood Circle. This evidence alone provides more than a sufficient basis for the jury to conclude that Stallworth used an instrumentality of interstate commerce in kidnapping the victim. Proof of actual interstate travel is simply not required under section 1201(a). *See, e.g.,* *Ballinger*, 395 F.3d at 1226. Accordingly, Stallworth's first argument lacks merit.

**B.     Stallworth's argument that the United States failed to prove a *prima facie* case of kidnapping**

Stallworth next argues that the United States "failed to prove a prima facia case of kidnapping, as well as proof beyond a reasonable doubt, after Defense resting [sic], and before the jury's verdict." (Doc. 127 at 1, ¶ 2). Contrary to Stallworth's claim, the evidence presented by the United States in support of its case was overwhelming and more than sufficient to support the jury's verdict. This included video evidence of Stallworth speaking to children in the immediate vicinity of where the victim disappeared (GX 41 & 42), evidence that showed the movements of Stallworth's cell phone (GX 79), expert evidence of the victim's DNA in Stallworth's apartment (GX 77), evidence of the recovery of the victim's body (GXs 81–90), and the victim's autopsy (GX 92). Accordingly, this argument lacks merit.

**C.     Stallworth's argument that the Court denied his request to employ additional counsel, thereby violating his Sixth Amendment rights to a fair trial and counsel**

Stallworth next argues that that he should either be acquitted or given a new trial because the Court denied his request to employ additional counsel. He claims that he was "overwhelmed" and "severely outmatched" by the United States, considering that it had three attorneys and a legal assistant, presented 23 witnesses, many of them FBI agents or experts, and submitted approximately 110 exhibits. (Doc. 127 at 1 ¶ 3.) Stallworth complains that his counsel had to "prepare for the voluminous amount of case material, retain said material at trial, and then be able to effectively perform against the Government." (*Id.*)

Under 18 U.S.C. § 3006A(e), counsel may request investigative, expert, or other services necessary for an adequate defense from the court in an *ex parte* proceeding, and a district court may grant such a request upon finding that such services are necessary, and that the defendant is financially unable to obtain them. However, as set forth in the statute, a defendant must make an adequate showing that such services are necessary; the defendant does not merely receive these services upon request. The decision to grant or deny a motion for services pursuant to section 3006A(e) is committed to the sound discretion of the district court. *See United States v. Rinchack*, 820 F.2d 1557, 1563 (11th Cir. 1987).

As an initial matter, the Court notes that Stallworth was indicted in July 2020, and until March 2022, when the United States filed its notice that it would not be

seeking the death penalty in this case, Stallworth did in fact have, at the Court's expense, additional counsel assigned to this case and assisting in preparation of this case for trial.

Moreover, Stallworth has not offered any showing as to how the arguments or evidence presented at his trial would have been different with the aid of additional counsel or that the denial of additional counsel in any way hindered his constitutional rights or ability to present a defense. Accordingly, this argument lacks merit.

**D.    Stallworth's argument that the Court interrupted and unreasonably terminated his counsel's opening statement at trial, thereby denying him his Sixth Amendment right to a fair trial and his substantive and procedural due process rights under the Fifth Amendment**

Stallworth next argues that the Court wrongly terminated his counsel's opening statement to the jury, telling him to "sit down" in front of the jury, thus hindering his ability to present a defense at the outset of trial. (Doc. 127 at 1-2 ¶ 4.)

Several minutes into his opening statement, Stallworth's counsel made the following statements:

> Now, they don't want you to hear what Derick Brown has to say about it or her statements. I am going to put them to the test of they can offer it but I want to see if they are going to offer her statements. They don't want you to hear about Derick Brown because she is, everything is going –

(Trial transcript, doc. 129 at 23). This Court then stopped Stallworth's counsel, asked counsel for both parties to approach the bench, and the following exchange occurred outside of the hearing of the jury:

| | |
|---|---|
| The Court: | Opening statements is what you anticipate the evidence to be. I mean, you have been dancing back around the line all along but this last part about arguing whether you are going to see whether the Government introduces the exhibits, you know, that's improper. It's opening statements. |
| | Okay? |
| Mr. Collins: | Okay. I got you. |
| The Court: | It's evidence, not argument. So don't do it again because I am going to ask you to sit down next time. Okay? |
| Mr. Collins: | Okay. |
| The Court: | Let's just stick with what you anticipate the evidence to be. Okay? |

(*Id.* at 23-24).

Back in open court, Stallworth's counsel continued with his opening statement as follows:

Derick Brown – everything you hear is going to go to Derick Brown. Okay.

Now, my client has talked at length with the Government, with the police, and you are going to hear his statements. Now, you are going to hear some things that they are going to try, they are going to use other

things, bad things my client may have done that they are going to try and use to say he did this, and Judge is going to instruct you. But what I want to do is tell you this, is that Derick Brown is the author of everything. And my client made one mistake; he made one mistake. Well, the mistake of being with her. But he fell in love; he was in love. He liked her, and he didn't see who the person she really was. So my client made one big mistake, one big mistake, and that is he lied to the police about seeing the child at the apartment. Not anything else, but that he saw the child at the apartment.

And I know it's going to be hard and it's a little confusing right now about him being with Derick Brown and then him not seeing this child until they got to the apartment. That's what's going to happen. But you will see from the evidence; I am going to let you see how that happened. And he did not – when he lied, he did not lie about anything that he has done because through all of this my client has never admitted to doing any of this. Everybody has wanted to get him to say that he admitted to this. Everybody. Everybody has wanted to –

(*Id.* at 24-25.) This Court then stopped counsel again, and the following exchange occurred:

| The Court: | Counsel – all right. Are you done? |
|---|---|
| Mr. Collins: | I am about to finish, sir, if you give me a little leeway. |
| The Court: | Don't – look. Ladies and gentlemen, the purpose of an opening statement is to tell what the evidence is. It's not the Perry Mason time to argue the case. So, any arguments he is making about what he thinks this and thinks that is inappropriate.<br><br>I will allow counsel to continue if he will stick with what you anticipate the evidence to be. |
| Mr. Collins: | Okay. I am about finished. |

| The Court: | Please. |
|---|---|
| Mr. Collins: | All right. So he lied, and I expect the evidence to show that my client did not lie about anything he did. It would be a lie about what Derick Brown did. And he was caught in a situation of not wanting to, I guess, be a snitch or tell on her, or he was more in love and caught between trying to protect her. And our evidence would be my client has not admitted to anything. |
| | And I am going to stop; I am going to sit down like the judge said. We are going to do the case and I am going to come and talk to you about this at the end. And I think you are going to be more receptive to what I am talking about at the end of this. |
| | Thank you. |

(*Id.* at 26-27).

It is well-settled that a judge has broad discretion in the management of a trial. *United States v. Hilliard*, 752 F.2d 578, 582 (11th Cir. 1985). Despite being warned twice, Stallworth's counsel continued to make statements that were improper argument rather than merely stating what he expected the evidence to show during his opening statement. Nonetheless, the Court did not stop counsel's opening statement and allowed counsel to finish. Accordingly, Stallworth's argument that his counsel was told to "sit down" by this Court in front of the jury and that his counsel was not permitted to finish his opening statement is simply not supported by the

record. Moreover, Stallworth has offered no argument as to how his constitutional rights were affected. Accordingly, this argument lacks merit.

**E.    Stallworth's argument that his counsel was prevented from presenting evidence regarding actions taken by his co-conspirator, Derick Brown, and was admonished unreasonably by this Court throughout trial**

Stallworth next complains generally that the Court admonished his counsel several times during trial or otherwise curtailed arguments or comments that his counsel made that the Court deemed were improper. (Doc. 127 at 2 ¶ 5.) Stallworth has presented no concrete examples of these instances, except one, and no argument or caselaw explaining why he believes that the Court was incorrect in any evidentiary rulings or in curtailing any comments or statements that his counsel made.

Stallworth specifically mentions an instance wherein his counsel was admonished for not knowing "the rules." The Court believes that Stallworth is referring to an instance when his counsel was cross-examining a United States witness, a nurse at the Pickens County Jail, who testified that she observed Stallworth say to another nurse: "I may have raped her, but I didn't kill her. She did that." (Doc. 134 at 102.) On cross-examination of this nurse by Stallworth's counsel, the following exchange occurred:

> Mr. Collins:         Now, you didn't report it immediately, let's say if someone had said something inappropriate to you, wouldn't you have gone straight to the boss and

| | |
|---|---|
| | said, this person said this or if they did something to you inappropriately, wouldn't you have gone straight to the boss? |
| Witness: | Not necessarily. |
| Mr. Collins: | So if an inmate made a sexual advance towards you – |
| Mr. Peeples: | Objection, beyond the scope. |
| The Court: | Sustained. |
| Mr. Collins: | Okay, so – |
| The Court: | Counsel, you know what the rules are; okay? Next question. |
| Mr. Collins: | Okay. |
| The Court: | I'm getting at your expression. |
| Mr. Collins: | Okay. It's a lot of rules, Judge, but that's fine. |
| The Court: | I'm sorry? |
| Mr. Collins: | I said, it's a lot of rules. But that's fine. |

(*Id.* at 117-18.) The Court then excused the jury, and the following exchange occurred:

| | |
|---|---|
| The Court: | Mr. Collins, you know, you're a good lawyer, and this is the second time that I have talked to you about this. When you make an expression about my rulings and try to insinuate to the jury that I'm imposing excessive rules or I'm doing something that's not like with everybody else, we have a |

14

|                 |                                                                                                                                                                                                                          |
|-----------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                 | problem. I have a job to do, you have a job to do, and the Government has a job to do. This is the second time I have said something to you. The third time won't be so nice. Do you understand me?                          |
| Mr. Collins:    | Yes, but that was not my insinuation.                                                                                                                                                                                     |
| The Court:      | I understand that you may not have intended it that way, but both times it came out that way.                                                                                                                             |
| Mr. Collins:    | Well, it's never my insinuation Judge, and if you took it that way, I apologize.                                                                                                                                          |
| The Court:      | Okay. I don't want you to give the impression to the jury that you and I are on opposites sides here, okay? You have a job to do, I have a job to do, the Government has a job to do. I want this case decided fairly without that kind of influence. |
| Mr. Collins:    | I apologize. It was never my intention.                                                                                                                                                                                   |
| The Court:      | We done with that?                                                                                                                                                                                                        |
| Mr. Collins:    | Yes.                                                                                                                                                                                                                      |
| The Court:      | Bring the jury back in please.                                                                                                                                                                                            |

(*Id.* at 118-19.)

As can be seen from the transcript quoted above, this Court admonished Stallworth's counsel outside the presence of the jury and continued with the trial. Without any evidence or argument as to why any of the Court's rulings were improper, Stallworth cannot establish a violation of his constitutional rights meriting an acquittal or new trial. Thus, this argument lacks merit.

15

**E.**    **Stallworth's argument that the Court prevented his counsel from arguing in closing statement that the United States did not want the jury to see photos of the inside of Derick Brown's SUV, thus violating his rights to a fair trial, counsel, and due process**

Stallworth's final argument concerns his counsel's closing statement. Stallworth states that his counsel wanted to, but was not allowed to, tell the jury that the United States did not introduce into evidence photos of the inside of Derick Brown's SUV. According to Stallworth, this would have supported the defense's theory that Stallworth did not know that the victim was inside the SUV due to the condition of the inside of the SUV.

As with previous arguments, a review of what actually occurred at trial is helpful to the resolution of this issue. Several minutes into Stallworth's counsel's closing statement, he made the following remark:

> Now, the State, the only thing they want you to see – can you pull up exhibit, State's (sic) exhibit number 9. This is the only thing they want you to see about this car. The only thing they want you to see about the car. You heard me ask Agent Eric Salvador on the stand, are there pictures of the inside of the car?

(Doc. 135 at 30.) The United States objected to this remark, and the following exchange occurred:

> (Sidebar, outside the presence of the jury)
>
> . . .

Mr. Milner:        Your Honor, I believe defense counsel is about to
                   argue we did not offer those photos. If counsel
                   wanted them to see it he got photos in discovery if
                   he wanted to see it.

Mr. Collins:       If I can respond.

The Court:         You are not permitted to say the Government didn't
                   produce the pictures. You have to say – you were
                   permitted to say the pictures aren't in evidence and
                   you don't see that.

Mr. Collins:       Don't see what?

The Court:         What I am saying is the jury can find your client not
                   guilty because of a lack of evidence or anything else.

Mr. Collins:       Okay.

The Court:         The problem is you can't say – if you say the
                   Government didn't want you to see these pictures
                   and you didn't put them on.

Mr. Collins:       It's not in evidence.

The Court:         You could put them on.

Mr. Collins:       Okay. It's not in evidence.

(Back in open court.)

The Court:         Start back, please.

Mr. Collins:       There are no pictures in evidence of the inside of the
                   car because they don't want you to see how –

Mr. Milner:        I'm sorry. I can't –

17

| | |
|---|---|
| The Court: | Ladies and Gentlemen, both sides had these pictures and both sides could have offered them into evidence. So it's inappropriate to say because they didn't want you to see them. |
| | Move to the next issue. Let's go. |
| Mr. Collins: | Okay. So there is not a picture in evidence of the inside of the car, okay? . . . |

(*Id.* at 30-32.) As is evident from the transcript, this Court stopped counsel from suggesting that the United States concealed or did not produce photos of the inside of the SUV, because that would not have been truthful.

Nonetheless, counsel again raised his dissatisfaction with the Court's ruling immediately before the Court gave the jury instructions. The following exchange occurred during a sidebar outside of the presence of the jury:

| | |
|---|---|
| Mr. Collins: | . . . Judge, we talked about the pictures and inside of the vehicle. You instructed the jury that we had that set of pictures. Judge, I think that goes against the fact that the State (sic) has the burden; we don't have to present pictures, they have to. And I think – |
| The Court: | Yeah, but you said the Government didn't produce – |
| Mr. Collins: | Yeah, that's my point. They have to prove it. So – I am just making a record. I know you made your ruling. |

(*Id.* at 73-74.)

Then, this Court, in consideration of Stallworth's objections, specifically addressed the issue of the photos with the jury during jury instructions, as follows:

> . . . As to each charge in the Indictment, the Government has the burden of proving the defendant guilty beyond a reasonable doubt. And if it fails to do so, you must find that defendant not guilty.
>
> And I am going to go off script here real quick and tell you something. At one point during the closing arguments I made the statement that the photographs of the, I think it was the inside of the vehicle were available to both sides. That does not change this. No matter what, the Government has to prove the defendant guilty beyond a reasonable doubt, okay?
>
> All right. Back on script.

(*Id.* at 77-78.)

Stallworth argues that by advising the jury that both sides had photos of the inside of the SUV, the Court implied that the defense did not want to show the jury the photos because they would have incriminated Stallworth and implied generally that the defense had a burden of proving Stallworth's innocence. Stallworth acknowledges that the Court instructed the jury specifically on this issue during jury instructions but nonetheless contends that the damage was done, warranting a new trial or acquittal. Not so. This Court prohibited Stallworth's counsel from making the inappropriate and untrue statement that the United States concealed from the jury photos of the inside of the SUV. The only reason that the Court had to do so in front of the jury is because, despite the fact that it had just been discussed during

sidebar, counsel immediately made the improper statement again. Nonetheless, the Court, in consideration of counsel's concern about the burden of proof, made clear to the jury that although it had noted previously that both sides had the photos and either side could have submitted them as evidence, that did not change the fact that the United States has at all times the burden of proving guilt. On this record, the Court sees no error warranting a new trial or acquittal on this issue.

It is also worth noting that Stallworth's counsel attempted to make the same type of argument with regard to the presence of beds in Derick Brown's apartment, as follows:

> Mr. Collins:          . . . They wanted you to believe they had this child's DNA, said just because their DNA were together doesn't mean they were there together. Could have been deposited at different times, could have been transferred there from other places. That's not the case. Then they don't want you to know about other beds in the bedroom –
>
> Mr. Milner:          Objection, your Honor.
>
> Mr. Collins:          I'm sorry, Judge, I am just used to saying – I'm sorry. The lack of evidence. I'm sorry.
>
> The Court:          Hang on just a second. Stop.
>
> Mr. Collins:          And I am going to wrap it up, Judge.
>
> The Court:          Ladies and Gentlemen, you will recall what the evidence actually is in the case and what it is not. Let's move on.

(*Id.* at 50-51.) The above exchange makes clear that counsel understood in another instance that it was not proper to make the argument that the United States was in some way hiding evidence. In sum, Stallworth's final argument in support of acquittal or new trial lacks merit and is thus rejected.

## IV.   Conclusion

For the aforementioned reasons, Stallworth's motion for a new trial and for acquittal (doc. 127) is **DENIED**.

**DONE** and **ORDERED** on January 13, 2023.

_____
L. Scott Coogler
United States District Judge

160704